Robert M. Linn (Cal. State Bar # 190387)
COHEN & GRIGSBY, P.C.
625 Liberty Avenue
Pittsburgh, PA 15222-3152
Phone: (412) 297-4900
Fax: (412) 209-0672
rlinn@cohenlaw.com

Attorneys for Plaintiff,
PPG INDUSTRIES INC.

FILED
JUL 27 2016
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

CV 16 80160 MISC.
HRL

| | |
|---|---|
| **PPG INDUSTRIES, INC., a Pennsylvania corporation,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JIANGSU TIE MAO GLASS CO., LTD., a Chinese company; BENHUA WU, an individual; and MEI ZHANG, an individual.**<br><br>**Defendants.** | **Case No.** ____________<br><br>**PPG INDUSTRIES, INC.'S MEMORANDUM OF AUTHORITIES IN SUPPORT OF ITS MOTION TO ENFORCE ITS SUBPOENA FOR PRODUCTION OF DOCUMENTS SERVED ON GOOGLE, INC.**<br><br>FILE BY FAX |

PPG Industries, Inc. ("PPG") requests that this Court enter an order requiring Google, Inc. ("Google") to comply with its Subpoena to Produce Documents, Information, or Objects that seeks the production of email communications received or sent to former PPG employee Thomas Rukavina (now deceased) between January 1, 2012 through the present.

## I. PRELIMINARY STATEMENT

In May 2015, the United States arrested and charged Mr. Rukavina with theft of trade secrets, pursuant to 18 U.S.C. § 1832, for his purported involvement in the unlawful acquisition and misappropriation of PPG's confidential and proprietary technologies. After his detention hearing

later that month, Mr. Rukavina died.

On July 24, 2015, PPG sued Defendants in the United States District Court for the Western District of Pennsylvania for, among other things, the unlawful theft, disclosure and use of PPG's trade secrets by Defendants and Mr. Rukavina. On September 22, 2015, PPG moved for an order permitting limited pre-answer discovery by serving document subpoenas upon the FBI and other non-parties to ascertain the nature and scope of Mr. Rukavina's wrongful access, retention and disclosure of and trafficking in PPG's trade secrets as well as the issue of to whom Mr. Rukavina may have wrongfully disclosed PPG's trade secrets. In support, PPG submitted an affidavit of Mr. Rukavina's brother, owner of Mr. Rukavina's digital assets and executor of Mr. Rukavina's Estate, which provided lawful written consent, pursuant to 18 U.S.C. § 2702(b)(3), to the production of all materials sought by the Subpoena and waived any objections that could be asserted against any non-parties' production of the same. The court entered an order granting PPG's motion and permitting PPG to serve the requested subpoenas upon the non-parties, including Google.

Plaintiff served on Google—which is headquartered in this judicial district—a Subpoena to Produce Documents, Information, or Objects ("Subpoena") seeking emails received or sent to Mr. Rukavina's email address, tgrukavina48@gmail.com, from January 1, 2012 through the present. Google failed to produce all responsive documents and objected to the Subpoena, asserting that the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510 to 2711, prohibits it from disclosing the information. The ECPA generally prohibits the voluntary disclosure of electronic communications, but it has exceptions, permitting the production of communications "with the lawful consent of the originator or an addressee or intended recipient of such communication, or the subscriber in the case of remote computing service." *See* 18 U.S.C. § 2702(b)(3).

There can be no dispute that Mr. Rukavina is the originator, addressee and/or subscriber of the communications at tgrukavina48@gmail.com. Google, however, refuses to acknowledge that the

consent is lawful. As a result, PPG respectfully requests that the Court grant PPG's motion, overrule Google's objections and require Google to comply promptly with the Subpoena.

## II. STATEMENT OF FACTS

### A. Defendants and Mr. Rukavina Wrongfully Acquired and Used PPG's Confidential and Proprietary Technologies

PPG is a Pittsburgh-based company that supplies coatings, specialty materials, glass and fiberglass products to customers worldwide. (*See* Complaint, *PPG Indus. v. Tie Mao Glass Co.*, 2-15-cv-00965-MRH (W.D. Pa. Jul. 24, 2015) ("W.D. Pa."), ECF-1, ¶ 1.) One of PPG's lines of business develops, manufactures and sells bullet-resistant transparent armor used for automotive and locomotive windshields, windscreens and civil and military aviation applications. (*Id.*) Defendant Jiangsu Tie Mao Glass Co., Ltd. ("Tie Mao Glass"), a China-based manufacturer of bulletproof and transparent armor used for automotive and locomotive windshields, windscreens, sea vessels and military, is a competitor of PPG. (*Id.* at ¶ 2.)

Beginning as early as 2013, Tie Mao Glass, its Chairman and CEO Benhua Wu and its Engineer and Purchasing Agent Mei Zhang (collectively "Defendants"), along with Mr. Rukavina conspired and agreed to engage in a scheme to wrongfully obtain and exploit PPG's confidential, proprietary information and to use PPG's research and development technologies and trade secrets to manufacture products in China that compete directly with PPG throughout the world. (*See* W.D. Pa. ECF-1 ¶¶ 23-42; *see also* Declaration of Robert M. Linn ("Linn Dec."), Ex. A.) In early 2013, Mr. Rukavina and former PPG employee Yabei Gu traveled to China and met with Tie Mao Glass Chairman and CEO Mr. Wu to discuss the sale and trafficking of PPG technologies. (*See* Linn Dec., Exs. B-D.) In May 2014, Mr. Wu traveled to Detroit and met with Mr. Rukavina to further their conspiracy. (*See* Linn Dec., Ex. E.)

Defendants and Mr. Rukavina regularly used email to facilitate their unlawful activity. For example, Mr. Rukavina sent Defendants by email a PPG proprietary report that detailed the process

to manufacture windows for use in certain aircraft. (*See* Linn Dec., Ex. A., ¶ 16.) To PPG's knowledge, no other company in the industry has that technology. (*Id.* ¶ 19.) On June 21, 2014, Mr. Rukavina sent another email to Defendants summarizing "everything [he] can deliver to [Tie Mao Glass]," including some technologies that were outside Mr. Rukavina's expertise and beyond his former access authority at PPG. (*Id.* ¶¶ 20-21.) In February 2015, PPG learned that Defendants and Mr. Rukavina sent an email to a PPG sub-contractor using PPG's proprietary drawings to solicit the sub-contractor to manufacture "the same molds" used for PPG projects that developed high-speed transportation windows. (*See* W.D. Pa. ECF-1 ¶¶ 31-36.) The sub-contractor notified PPG, and PPG alerted the FBI of a potential theft of its confidential and proprietary information. (*Id.*)

Subsequently, the FBI searched Mr. Rukavina's home, yielding additional emails detailing Defendants' and Mr. Rukavina's use and misappropriation of PPG's trade secrets and hard-copy documents comprised of PPG's confidential and proprietary information including descriptions and development plans for new products, project progress reports, experiment descriptions and results, and product qualification test results. (*See* W.D. Pa. ECF-1 ¶ 43.) The FBI also seized Mr. Rukavina's digital media storage devices from his home. (*See* W.D. Pa. ECF-1 ¶ 8.) Among other things, including digital copies of PPG's confidential and proprietary information, the devices contained emails that Mr. Rukavina authored or received. (Linn Dec., Exs. B-D.) Some of the messages detailed Mr. Rukavina's plans to sell "10 years of [PPG's] R&D" to Defendants, particularly in response to Defendants' representation that they "buy[] international technology to shorten time to manufacturing." (*See id.* Ex. D.) Several of the messages referred to or were exchanged with Yabei Gu. (*See id.* Exs. B-D.) Others identified the dates of Mr. Rukavina's international travel plans to and from Defendants' facilities in China as well as Defendants' travel plans from China to the United States. (*See* Linn Dec., Exs. B, E.)

On May 8, 2015, the United States arrested and charged Mr. Rukavina with criminal theft of

trade secrets pursuant to 18 U.S.C. § 1832. (*See* W.D. Pa. ECF-1, ¶ 44.) After Mr. Rukavina's detention hearing on May 26, 2015, he was released from custody on bond and placed under house arrest. (*Id.*) Mr. Rukavina died on or about June 5, 2015. (*Id.*)

**B. Mr. Rukavina's Brother, Owner of Mr. Rukavina's Digital Assets and Executor of his Estate, Provided Lawful Written Consent for, and Waived All Objections to, Google's Production of All Materials Sought by the Subpoena**

On July 24, 2015, PPG initiated its lawsuit against Defendants. Rather than subjecting Mr. Rukavina's estate to the emotional and monetary costs of being a defendant, PPG released Mr. Rukavina's estate in exchange for the execution of a consent and waiver ("Rukavina Consent"). (*See* Linn Dec., Ex. F ¶ 5.) The Rukavina Consent, in the form of an affidavit, included lawful consent to the production of any and all materials sought by the Subpoena and waived, pursuant to the ECPA exception 18 U.S.C. § 2702(b)(3) and any equivalent federal or state statute or regulation, all objections, including privacy and privilege objections, that could be asserted against Google's production of the communications. (*Id.*)

Mr. Rukavina's brother, Robert Rukavina, is the owner of Mr. Rukavina's digital assets and executor of Mr. Rukavina's Estate. Accordingly, he was authorized to enter into this consent. Indeed, before his death and in his Last Will and Testament, Mr. Rukavina provided that his brother be given "all of my tangible personal property of every kind and description." (Linn Dec., Ex. G, ¶ 3.01.) To ensure that all assets were bequeathed to his brother, including digital assets, Mr. Rukavina provided that "[a]ll of the rest, residual and remainder of the property that I own at the time of my death, both real and personal, and of every kind and description, I give outright and absolutely to my brother, Robert A. Rukavina." (*Id.* ¶ 4.01.)

**C. The Subpoena Seeks to Identify the Scope of Mr. Rukavina's Acquisition and Wrongful Disclosures of PPG's Confidential and Proprietary Technologies**

On September 22, 2015, PPG moved the U.S. District Court for the Western District of Pennsylvania for an order permitting it to conduct limited pre-answer discovery by serving document

subpoenas upon the FBI, Google and other non-parties—*i.e.*, Mr. Rukavina's other email and cloud storage providers, banks, and others. (*See* Linn Dec., Ex. H.) The subpoenas sought to ascertain the nature and scope of Mr. Rukavina's wrongful access, retention and disclosure of and trafficking in PPG's trade secrets as well as the issue of to whom Mr. Rukavina wrongfully disclosed those trade secrets. (*Id.*) On October 19, 2015, after reviewing the Motion, Rukavina Consent, and the proposed subpoenas, the Court, entered an order permitting PPG to serve the requested subpoenas. (*Id.* Ex. I.)

**D. Google Refuses to Comply with the Subpoena in Full**

Google was served with the Subpoena and the Rukavina Consent on October 26, 2015. (*See* Linn Dec., Exs. J-K.) The Subpoena requests that Google produce, among other things, all communications received or sent, from January 1, 2012 through the present, to Mr. Rukavina's email account tgrukavina48@gmail.com ("Account"). (*Id.*) Rather than producing all responsive documents, however, Google asserted a host of boilerplate objections including its claim that the ECPA prohibits it from complying with the Subpoena in full. (*See id.* Ex. J.) Although it may comply with the subpoena with the consent of the account holder, Google refuses to recognize the Rukavina Consent, contending that it is "unable to verify that the person signing the form is the account owner." (*Id.* at 2.) Attempts to resolve this issue with counsel for Google have been unsuccessful. (*See* Linn Dec., ¶ 16.)

Google produced some non-content information responsive to the subpoena establishing that Mr. Rukavina sent and received emails to Yabei Gu using the Account. (*See* Linn Dec., Ex. N.) After PPG obtained and reviewed certain additional materials produced by the FBI pursuant to a subpoena, PPG filed the instant motion.

## III. ARGUMENT

The Subpoena at issue here seeks discovery related to the scope of Defendants' and Mr. Rukavina's wrongful acquisition and use of PPG's confidential and proprietary technologies. Access

to Mr. Rukavina's emails is required for PPG to protect itself from further unlawful disclosure and use of its confidential and proprietary information. Without it, PPG will continue to suffer irreparable harm. *See Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 92 (3d Cir. 1992) ("A threat of disclosure may establish immediate irreparable harm"); *BP Chemicals Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 263 (3d Cir. 2000) (noting as irreparable harm "the public perception . . . that BP was unable to protect its proprietary trade secrets"); *see also Sheridan Broad. Networks, Inc. v. NBN Broad., Inc.*, 693 A.2d 989, 995 (Pa. Super. Ct. 1997).

**A. The Rukavina Consent is "lawful consent" under the ECPA**

1. <u>Google Must Produce the Requested Documents When Presented With a Lawful Consent</u>

The ECPA generally prohibits public electronic communication services and remote computing services from "knowingly divulge[ing] to any person or entity the contents of a communication" maintained or stored with that public service provider. *See* 18 U.S.C. § 2702(a)(1) and (2). When faced with a properly issued subpoena, however, the service provider cannot unilaterally refuse to comply with the subpoena unless it can prove that "*no exception or waiver applies*" to the ECPA. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii); *see also In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014); *Babai v. Allstate Ins. Co.*, 2015 WL 1880441, at *2 (W.D. Wash. Apr. 24, 2015). Pursuant to an ECPA exception, Google must produce the requested communications when presented "with the lawful consent of the originator or an addressee or intended recipient of such communication, or the subscriber in the case of remote computing service." *See* 18 U.S.C. § 2702(b)(3). Google, however, refuses to recognize the notarized and sworn Rukavina Consent. Google's refusal is without merit.

2. <u>The Rukavina Consent is Lawful</u>

Pursuant to the ECPA exception 18 U.S.C. § 2702(b)(3) and any equivalent federal or state statute or regulation, the Rukavina Consent provides consent to the production of all materials sought

by the Subpoena and waived any objections, including privacy and privilege objections, that could be asserted against Google's compliance with the Subpoena. Accordingly, the Rukavina Consent requires Google to produce the requested communications pursuant to 18 U.S.C. § 2702(b)(3). *See Thayer v. Chiczewski*, 2009 WL 2957317, at *6 (N.D. Ill. Sept. 11, 2009) ("[T]he SCA permits the disclosure of otherwise protected communications, if the subscriber, or the author or the intended receiver of such communications gives his consent.").

Before his death and in his Last Will and Testament, Mr. Rukavina provided that his brother be given "all of my tangible personal property of every kind and description." (*See* Linn Dec., Ex. G, ¶ 3.01.) To ensure that all assets were bequeathed to his brother, including digital assets, Mr. Rukavina's Will also provided that "[a]ll of the rest, residual and remainder of the property that I own at the time of my death, both real and personal, *and of every kind and description*, I give outright and absolutely to my brother, Robert A. Rukavina." (*Id.* ¶ 4.01 (emphasis added).) Pursuant to the Will, Mr. Rukavina's brother took both equitable and legal title to Mr. Rukavina's digital assets and emails, and thus was authorized to provide consent to the disclosure of such materials pursuant to 18 U.S.C. § 2702(b)(3). *See Thayer*, 2009 WL 2957317, at *6; *In re Facebook, Inc.*, 923 F. Supp. 2d 1204, 1206 (N.D. Cal. 2012) (recognizing that service providers like Google may accept an executor's consent to disclose the content of communications pursuant to 18 U.S.C. § 2702(b)(3)); *see also, e.g., In re Air Crash Near Clarence Ctr., New York, on Feb. 12, 2009*, 2011 WL 6370189, at *6 (W.D.N.Y. Dec. 20, 2011) ("The SCA does not apply to the user of the electronic communications service himself, nor does it impose civil or criminal liability when action is taken in good faith pursuant to a court order. [...] As the duly authorized personal representative of Yao's estate, Plaintiff has possession, control, and authority over Yao's property." (citations omitted)).

Moreover, under Pennsylvania law, the executor and personal representative of Mr. Rukavina's estate takes title to and has the right and obligation to take possession of, maintain and

administer all of the personal and real property of the decedent. *See* 20 Pa. Cons. Stat. §§ 301 and 3311. As such, Mr. Rukavina's executor takes title to and has the right to take possession of, maintain and administer Mr. Rukavina's electronic communications as the subscriber, originator, addressee and/or intended recipient of the communications requested under the Subpoena. *See id.* There is no basis to infer that Mr. Rukavina's digital assets are excluded from his "personal estate," particularly in light of the broad and sweeping language of his Will. Instead the opposite is true. *See* 20 Pa. Cons. Stat. § 3332 ("Except as otherwise provided in this code, nothing in this code shall be construed to limit the inherent powers and duties of a personal representative."); *see also* Jt. St. Govt. Comm. Comment (1949) ("This section has been added out of an abundance of caution to make it clear that the powers listed in the Act are not all-inclusive."); *In re Mackay's Estate*, 25 Pa. D. & C. 544, 546 (Orphans' Ct. 1936) ("An administrator or executor steps into the shoes of the decedent.").

**B. Mr. Rukavina Is the Originator or an Addressee or Intended Recipient of the Communications Requested by the Subpoena**

It is incontrovertible that Mr. Rukavina is the originator, addressee and/or intended recipient of communications sent or received by the Account. PPG's internal investigations, third-party witness testimony as well as other facts and documents collected through a review of the evidence all corroborate that Mr. Rukavina is the Account's holder. For example, records from Apple, Inc. identify Mr. Rukavina as the account holder of Apple ID: trukavina48@gmail.com, confirm that the Account is linked and related to Mr. Rukavina's home address and phone numbers and confirm that Mr. Rukavina "verified" his dominion over the Account when he used the account as his "primary" and "shipping" email accounts with Apple, Inc. (*See* Linn Dec., Ex. M.) There can be no question that Mr. Rukavina is the holder of the Account. Moreover, such correspondence is likely to be directly relevant to this lawsuit based on a review of other discovery (*id.* Exs. B-D) along with non-content information from Google showing that numerous emails were exchanged through the Account between Mr. Rukavina and Yabei Gu (*id.* Ex. N).

### C. Google Must Comply with the Subpoena

Google claims that the ECPA prohibits it from disclosing email content even when faced with a subpoena, but whether a civil discovery subpoena, standing alone, is an exception to the ECPA is at best unresolved and is not at issue in this case. *See, e.g., Al Noaimi v. Zaid*, 2012 WL 4758048, at *3 (D. Kan. Oct. 5, 2012) ("[T]he court need not resolve the issue of whether a civil discovery subpoena, standing alone, is an exception to ECPA because the Act allows a[] ... provider to produce records with the consent of the subscriber.").

Mr. Rukavina's brother, as the owner of Mr. Rukavina's digital assets as well as the administrator of the estate, consented to the production of all materials sought by the Subpoena, expressly pursuant to the ECPA exception 18 U.S.C. § 2702(b)(3). The Rukavina Consent also waived all objections that could be asserted against Google's production of the communications requested. *Id.* Accordingly, the Rukavina Consent provides the lawful consent required to meet the ECPA exception under 18 U.S.C. § 2702(b)(3), and as such, Google's reliance on the ECPA as grounds to refuse to comply with the Subpoena should be rejected. *See Thayer*, 2009 WL 2957317, at *6; *see also Negro v. Superior Court*, 230 Cal. App. 4th 879, 904 (2014) ("In sum, we find no sound basis for the proposition that the Act empowers service providers to defy civil subpoenas seeking discovery of materials that are excepted from the Act's prohibitions on disclosure."); *see, e.g., In re Ellsworth*, No 2005-296, 651-DE (Mich. Prob. Ct. 2005) (ordering Yahoo! to release emails to decedent's estate).

## IV. CONCLUSION

For the reasons set forth above, PPG respectfully requests that this Court grant PPG's motion and enter an order overruling Google's objections and compelling Google to produce all email communications received and/or sent to Mr. Rukavina's email address at trukavina48@gmail.com, between January 1, 2012 through the present.

Dated: July 27, 2016

Respectfully submitted,

By: ______________________

COHEN & GRIGSBY, P.C.
Robert M. Linn (Cal. State Bar # 190387)
625 Liberty Avenue
Pittsburgh, PA 15222-3152
(412) 297-4900

*Attorneys for Plaintiff, PPG Industries, Inc.*