# EXHIBIT 1

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| PPG INDUSTRIES, INC., a Pennsylvania corporation, Plaintiff, | ) C16-mc-00116-JLR |
| | ) SEATTLE, WASHINGTON |
| v. | ) August 17, 2016 |
| | ) Motion Hearing |
| JIANGSU TIE MAO GLASS CO., LTD., a Chinese company; BENHUA WU, an individual; and MEI ZHANG, an individual, Defendants. | ) |

VERBATIM REPORT OF PROCEEDINGS
BEFORE THE HONORABLE JAMES L. ROBART
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff: Jenny A. Durkan
Alicia Cobb
Quinn Emanuel Urquhart & Sullivan
600 University Street
Suite 2800
Seattle, WA 98101

For the Objector, Microsoft Corporation: Blake E. Marks-Dias
Riddell Williams
1001 4th Avenue Plaza
Suite 4500
Seattle, WA 98154

THE COURT: Please be seated. The clerk will call this matter.

THE CLERK: Case C16-mc-116, PPG v. Jiangsu.

Counsel, please make your appearance for the record.

MS. DURKAN: Your Honor, Jenny Durkan here for PPG Industries. I'm here with Alicia Cobb at counsel's table.

THE COURT: Thank you.

MS. COBB: Good afternoon.

MR. MARKS-DIAS: Good afternoon. I'm Blake Marks-Dias for Microsoft, and with me is Brien Jacobsen of Microsoft.

THE COURT: Counsel, there are two motions pending before the court today. Docket 1 is a motion to compel, brought by the plaintiff, and Docket 2 is a motion to transfer, brought by the defendant.

It seems to me, logically, to make the most sense, to deal with the motion to transfer first, because if I'm going to grant it, then there's no need to reach the motion to compel. And, therefore, I'm going to ask to hear presentations first about the motion to transfer.

I should alert you to the fact that as the advisory notes to Civil Rule 45 suggest, I have had occasion to talk to the court issuing the subpoenas, and so that's something that's not in the record, but that you should know.

That said, counsel, who's beginning on the motion to transfer?

MR. MARKS-DIAS: Well, Your Honor, just to clarify -- and I agree that this is the correct order to handle the motions in -- the motion to transfer was actually brought by the plaintiff.

MS. DURKAN: We brought both.

THE COURT: That's right, you brought both.

MS. DURKAN: We brought both, Your Honor.

THE COURT: Yeah.

MS. DURKAN: Thank you, Your Honor. Jenny Durkan for PPG.

And would it be appropriate to inquire what the district court in Pennsylvania opined for the record, or is that something that the court does not wish to share?

THE COURT: I intend to share it as part of my decision in this.

MS. DURKAN: All right.

THE COURT: I understand they have lovely weather in Pittsburgh.

MS. DURKAN: Thank you, Your Honor.

I think that, as the court has indicated, Rule 45 and the advisory notes make clear that, on a motion to transfer, that unless the party that is being subpoenaed agrees, that the focus is on whether there are exceptional circumstances. There's no argument, unlike in other cases that have been cited in the brief, there's no argument here that service was not proper or

that the court lacks jurisdiction. There's been no motion to quash the subpoena. So, really, the only question on the motion to transfer is whether there are exceptional circumstances that would justify transferring this action to Pittsburgh, and we would argue that there are indeed exceptional circumstances for a number of reasons.

First, I would say that Court Rule 45 has to be construed according to, of course, Court Rule 1, which provides that every matter has -- every rule has to be interpreted to secure the just, speedy, and inexpensive determination of every action and proceeding. And while the advisory notes make clear that the court must also evaluate the burden on the party that's been subpoenaed, I would argue that the cases cited in the brief and the authority argue for a balancing test.

So we think that there are exceptional circumstances that justify that this be transferred.

The factors. Of course, this court has ruled on these factors before, using the Judicial Watch factors, and itself has made rulings before and knows that there's a number of factors to look at. In the *Global Technologies* case, this court looked at the case complexity, the procedural posture, the duration of the pendency, the nature of the issues that were pending. The courts have also made clear that it is appropriate for the court to look at judicial economy, that you do not want multiple courts resolving issues which could result both in undermining the

management of the district court in Pittsburgh to manage its case, and it also could result in disparate rulings and additional expense throughout the country.

We think that inconsistent rulings, despite Microsoft's objection, is not only real but a palpable and probable outcome. As the papers have made clear, subpoenas have been served on people who -- on individual companies that are not only in different district courts throughout the country, but that would, if appealed, go up to the Ninth, Third, Fourth, and D.C. Circuits.

THE COURT: Is any of that in the record?

MS. DURKAN: Yes, Your Honor.

THE COURT: Where? Other than in your briefing.

MS. DURKAN: We attached a copy of the court's order allowing us to subpoena the companies, and I think that there are locations. But we can supplement the record to make that more clear, if Your Honor doesn't believe it's --

THE COURT: Let me be more precise in my question. You make the representation in your briefing that you've received responses to the subpoenas. I assume that means that you have heard from --

MS. DURKAN: There is currently pending -- and this is not in the pleadings -- there's currently pending -- in the Northern District of California, there may be disputes over two of the subpoenas that were issued. Subpoenas were also served on

Apple on the East Coast. I can't remember if that was the Maryland subpoena or the D.C. subpoena. But I can determine that for the court to make absolutely clear where the multiple jurisdictions are.

THE COURT: I understand where the jurisdictions are, because that's in your search warrant application.

What I'm looking for is a current update on the status of replies that your client has received that the court may not be aware of.

MS. DURKAN: Yes, Your Honor. Thank you for clarifying.

The replies that we have received, currently, there is litigation -- there's been objections that have been posed by two companies in California, and there will be litigation, I believe, in the Northern District of California. We anticipate that there may also be in Maryland and the District of Columbia. I don't know which of those those companies are, and I apologize for that. I will see if I can find that record in just one --

THE COURT: That's all right, counsel.

MS. DURKAN: I apologize, Your Honor.

THE COURT: Has any court ruled on any of these?

MS. DURKAN: No court has ruled to date. Your Honor would be the first court to rule.

THE COURT: Do you know when those are ripe?

MS. DURKAN: They will not be ripe for some time. I talked to my co-counsel last night, who's in D.C., who's handling

the case, and briefing has not been completed.

THE COURT: Thank you.

MS. DURKAN: I think that if you look at the factors here, not only is this a case that itself -- the seminal issue in the motion to compel has been decided in different ways by different courts and even in different ways by different magistrate judges in the same court. So I think that the chance that there could be inconsistent rulings is one that the court can take note of and that itself could undermine the efficiency of the court, as well as the ability to proceed in the underlying matter in Pittsburgh. It could well end up that if some courts allowed PPG to obtain the material and others did not, that trial could either be delayed or complicated for a variety of reasons. We think that weighing that against the burden or expense on Microsoft, which the court must be mindful on, the balance and balancing test, as indicated in *Argento* and other cases, it comes out in favor of transferring this motion. While not dispositive, the fact that Microsoft is a large corporation that is situated nationwide, that has customers in every state, that has actually, as we indicated in the record, litigated in the Pennsylvania courts before, is relevant. There's no burdensome production here, nor does it necessarily require the client itself to travel to the jurisdiction or to undertake acts within that jurisdiction. Also, it's of note that even pro-hac-vice admitted here are two lawyers on this very matter, in Washington, D.C.,

who could easily travel to Pennsylvania. It's only an hour flight. I have made it. And I think another factor that is not noted by the courts in this type of setting, but in other settings, is the certainty that Pennsylvania residents should have in knowing how their wills will be probated should not be subject to the vagaries of courts throughout the country.

So we think, if you look at the variety of the factors here, a just, speedy, and inexpensive resolution would require this to be transferred. We think it would avoid inconsistent results throughout the country. The need for the evidence is high. This is the best evidence of the underlying conspiracy in the case. The privacy interest that was implicated in other cases, like the *Facebook* case, is not relevant here, which we can get to more if the court reaches the motion to compel. The need for the evidence in a trade secret case, this type of evidence is a very compelling and important interest, which is also a factor to look at. And there's a minimum burden on Microsoft.

So for all of those reasons, we would urge the court to transfer this so that the court in Pittsburgh can resolve this and the other matters.

Thank you, Your Honor.

THE COURT: Thank you.

Mr. Marks-Dias. Mr. Jacobsen nice to see you again.

MR. JACOBSEN: Nice to see you.

THE COURT: You are in a different seat this time.

MR. JACOBSEN: (Nods affirmatively.)

MR. MARKS-DIAS: Unless the court has any questions, I will just begin.

THE COURT: Please.

MR. MARKS-DIAS: Rule 45(f) --

THE COURT: Let me give you one suggestion. The hardship on Microsoft is something I didn't feel was adequately developed, so I would like to hear you on that specifically.

MR. MARKS-DIAS: Thank you, Your Honor.

THE COURT: Wherever it fits into your presentation.

MR. MARKS-DIAS: Microsoft receives several hundred of these requests every year from jurisdictions all over the country, and if it were the case that they would have to attend the trial court and argue the motions to compel, then, effectively, there's a Microsoft exemption to Rule 45(f). And under the case law, there's no Fortune 500 or large company exemption.

The point of Rule 45(f) is to protect local nonparties to a dispute, like Microsoft, in which motions to compel that need to be resolved by the district court get resolved where Microsoft resides. So that's the burden argument.

Being that the rule was designed to protect local nonparties, the presumption is that motions to compel are heard where the nonparty resides, and it's the issuing party's burden to show exceptional circumstances. We don't have to come in and show to

you the opposite. So when we're talking about exceptional circumstances, it really boils down to a couple of things. One, we're looking at judicial economy. Is this court going to be somehow interfering with something that the trial court has already done? And, yes, the trial court looked at the subpoena in granting the motion for pre-answer discovery, but there's no indication in the record that the trial court has examined the ECPA issues.

The issue raised by the motion to --

THE COURT: Counsel, if you want a better record, you shouldn't drop into initials this soon.

MR. MARKS-DIAS: Oh. I'm sorry. Thank you. Electronic Communications Privacy Act --

THE COURT: Thank you.

MR. MARKS-DIAS: -- which I will hereinafter refer to as ECPA, E-C-P-A. Thank you.

There are many very interesting issues in the underlying litigation, but whether or not the executor's affidavit constitutes valid consent under the ECPA is not one of them. And so there's really a narrow, discrete issue in the motion to compel that we think ought to be heard here. So that's the judicial economy piece.

THE COURT: Well, let me probe that one with one question. What significance does it have that Microsoft had subpoenas issued to it and I think 12 different entities, all

coming out of the same case and, apparently, all being, more or less, the same subpoena? Is there in your mind -- what is your argument against the fact that it would be better to have one judge decide that as opposed to the prospect of having inconsistent rulings?

MR. MARKS-DIAS: Right. So acknowledging that this is a unique circumstance, where PPG has sent out multiple subpoenas to the same type of service providers, none of those have been transferred to the trial court. They're pending elsewhere.

So transferring Microsoft's out of its home jurisdiction to the trial court is not going to solve the problem of inconsistent rulings. It's speculative as to what's going to happen with the other 12 or so pending motions. We might need --

THE COURT: Well, counsel, certainly you can't say, when they see a well-reasoned decision from Judge Robart -- I'm sorry. It's late in the afternoon.

MR. MARKS-DIAS: And having not spoken with the trial judge myself, you know, I don't know. We would be in a different situation if, say, all of the other subpoenas that they had sent out had already been transferred to the trial court. I wouldn't be standing here making the argument to you that it makes sense for those other 11 to be heard by the trial court and for Microsoft's to be heard here. That wouldn't make sense. But that's not the situation we're in. So that's our argument on the inconsistent rulings.

The burden on Microsoft I think I have already addressed. Yes, Microsoft is capable of hiring lawyers elsewhere. It has done so. But it's entitled to the benefit of the rules, just like anybody else.

THE COURT: I don't know if he is still in the practice or not, but I think we used a Philadelphia lawyer who appeared before the Supreme Court fairly regularly. Maybe he's available.

MR. MARKS-DIAS: Perhaps. Touché. But we like the rule.

THE COURT: All right. Thank you.

Counsel, I don't want to sound flippant on this. I found it interesting. I graduated from law school in 1973. I didn't know that there was a Rule 45(f), but then I found out they didn't create it until 2013. So I felt better about the fact that they had slipped that one in.

Everything that both sides have said here today is an accurate statement of the law. Under 45(f), I am directed to not transfer, with the exception of a couple of limited circumstances. One, if the person who has received the subpoena consents. Clearly, Microsoft has not. Or if the court finds exceptional circumstances.

There is a paucity of guidance on what is exceptional circumstances. The best source that I found was the advisory notes, and so I have built my analysis around the advisory notes. The Ninth Circuit certainly doesn't have meaningful case law on

this, although it does have case law on changing venues generally.

It's uncontroverted that the court has authority to transfer if exceptional circumstances are present, and that the proponent of transfer, in this case PPG, bears the burden of showing that such circumstances are present. In this instance I find that they have.

The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and that's why I asked Mr. Marks-Dias to help me. Of the various factors that are deemed to be burdens, payment of attorney's fees to counsel is rather at the bottom of the list. I'm sure that Seattle rates are cheaper than Pittsburgh rates, although that may not be true. But, really, the cost of doing this seems to be basically not that great of a burden. And I didn't assume that the issuing court is in a superior position to resolve the subpoena-related motion. I do see some advantage in that. I'm not a member of the Pennsylvania bar. But we're dealing with a question of consent under federal law. And I think that Judge Hornak, H-o-r-n-a-k, is equally competent to decide.

What really causes me to decide this motion in the manner that I intend to do so is the guidance that a transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation. And the advisory notes give two alternatives for that. One is, has the court already

ruled on these issues? And I confirmed this morning that the court in Pittsburgh has not. But the second prong of that is, the same issues are likely to arise in discovery in many districts.

I smile to myself when Mr. Marks-Diaz said that unique circumstances in this case -- I was going to use the phrase "exceptional circumstances in this case" -- are that multiple similar subpoenas were issued, all of which appear to be being contested on the same question, and adding to that, unique to the America legal system, is that they're arising in different circuits, and, therefore, we will disrupt the issuing court's management of the underlying litigation if we get inconsistent results. It may be that only one result will be reached by all of the courts. But if that's the case, it ought to be the court which issued them originally and has the litigation pending in front of them.

So I find that the transfer is appropriate because the interests that I have described and the exceptional circumstances outweigh the interests of Microsoft, which is the party who has received the subpoena and is entitled normally to obtain local resolution of the motion.

Finally, something that I was shocked to find when I came on the federal bench, in regards to change of venue motions, there is not a mechanism whereby judges can talk to each other. In fact, it's an implicit violation; that every judge is its own

silo. But in the advisory notes, under 45(f), is the statement that "Judges in compliance districts may find it helpful to consult with the judge in the issuing court presiding over the underlying case when addressing subpoena-related motions." It seemed like a good idea, so I gave Judge Hornak a call, talked to his chambers, and they said, send it on down, because we would like to get them all here and deal with them in a uniform fashion. So that cemented it for me.

I'm going to grant the motion to transfer to the Western District of Pennsylvania as a related case to the cause number in the Western District -- in the Western District of Pennsylvania case, which I believe is 15-CV-965-MRH, which the parties will all know, because that's where the subpoena was issued out of.

And because of my ruling on the motion to transfer, I am not going to reach the motion to compel, and so I will direct the clerk to strike it.

Ms. Durkan, any questions?

MS. DURKAN: No, Your Honor. Thank you.

THE COURT: All right.

Mr. Marks-Dias?

MR. MARKS-DIAS: No. Thank you, Your Honor.

THE COURT: All right. Thank you, counsel. We will be in recess.

(Proceedings adjourned.)

C E R T I F I C A T E

I, Nickoline M. Drury, RMR, CRR, Court Reporter for the United States District Court in the Western District of Washington at Seattle, do hereby certify that I was present in court during the foregoing matter and reported said proceedings stenographically.

I further certify that thereafter, I have caused said stenographic notes to be transcribed under my direction and that the foregoing pages are a true and accurate transcription to the best of my ability.

/s/ Nickoline Drury

Nickoline Drury
OFFICIAL COURT REPORTER